J. JONES, Justice,
dissenting.
While I agree with much of what the Court says in its opinion regarding the Commission’s handling of evidentiary issues in the district court,[19] I disagree with the ultimate conclusion reached in the opinion. The Commission presented only one issue on appeal:
May PacifiCorp deduct obsolescence from the cost approach to value without offering evidence of the cause of the obsolescence, the quantity of the obsolescence, and that the asserted obsolescence actually affects the property?
I would hold that PacifiCorp failed to establish entitlement to a 20.88% reduction in the taxable value of its property under the cost approach, based on “external obsolescence.” PacifiCorp’s claim for an external obsolescence deduction in the amount of approximately $2,325,180,010 cannot be sustained on either legal or factual grounds, in my estimation.
PacifiCorp’s expert, Tegarden, utilized the income shortfall method to determine external obsolescence and to set a cost value for the company’s taxable property. According to Tegarden, “generally external obsolescence is caused by governmental regulations, governmental restrictions, zoning, rent control, competition, changes in supply and demand, changes in the economy, and changes in interest rates or costs of capital,” but “probably the main cause, is the regulatory aspects that affect PacifiCorp.” This includes “the regulatory commission’s specific exclusion of certain properties from the rate base, i.e. those properties financed by the funds provided by the deferral of federal income taxes.” External obsolescence also includes regulatory lag — delay in getting new plant and equipment into the company’s rate base. Tegarden projected that PacifiCorp could expeet a 7.2% rate of return on its *776 plant in service in 2008. He asserted that a PacifiCorp investor would expect a 9.1% rate of return. He then calculated external obsolescenee as follows:
Expected Rate of Return on Plant in Service 7.20%
Rate of Return Required by Investors = 9.10%
Percent Actual Rate of Return of Investor Required Rate of Return = 79.12%
Percent Obsolescence in Existing Plant: 100.00% [minus] 79.12% = 20.88%
Tegarden testified that it is not necessary to identify each individual factor contributing to external obsolescence and the amount attributable to each. Rather, he merely performs a “complete-unit-concept appraisal” that attributes any deficiency between the 7.2% and 9.1% return rates to external obsolescence, thereby reducing the taxable value of PaeifiCorp’s property by 20.88%, resulting in a reduction of $2,325,180,010.
This income shortfall method of determining cost certainly simplifies matters for the taxpayer. There is no need to go into the excruciating accounting detail necessary to establish and document the depreciation of plant and equipment for income tax and regulatory purposes. The method relieves the taxpayer of the bother of specifically identifying the assets alleged to be affected by external obsolescence and quantifying the amount of obsolescence affecting any particular asset. You need only identify a projected rate of return and a rate of return that will make investors happy and multiply the assets by the difference between the two in order to reduce your taxes — a sort of proof by smoke and mirrors approach. According to Tegarden, “[T]he higher [the projected rate of return], the lower the obsolescence.” Conversely, the higher the rate of return that will keep investors satisfied, the more external obsolescence a company can claim and the less property tax it will be required to pay.
The district court concluded that Tegarden’s cost approach was reasonable from an evidentiary standpoint and more persuasive than the approach advocated by the Commission. Therefore, PacifiCorp’s cost analysis was adopted by the court. However, I find the approach lacking on both factual and legal grounds.
This Court has not previously dealt with the income shortfall method and, therefore, it is worth examining how other courts in PacifiCorp’s service area have dealt with the issue. The decisions of those courts are not in any way binding on this Court but it certainly seems appropriate to consider how our sister states have ruled on similar claims made by this multi-state corporation.
The Commission cites Pacific Power & Light Co. v. Dept. of Revenue, State of Oregon, 308 Or. 49, 775 P.2d 303 (1989). Pacific Power & Light Co. (Pacific) is a predecessor of PacifiCorp. In that case, PacifiCorp’s predecessor did not specifically identify the income shortfall method. However, as here, both parties started with the depreciation reported on the company’s annual FERC Form 1 filing. Id. at 307. In addition to the depreciation reflected on the FERC filing, Pacific claimed obsolescence for “property purchased with funds held for ‘deferred income taxes’ (DIT)” and for property purchases entitled to investment tax credits (ITC), which were treated the same way as DIT for regulatory purposes. Id. at 305, 307. Oregon’s Tax Court considered the “obsolescence” label “to be misleading” but allowed the deductions for both DIT and ITC because Pacific was not able to earn on them. Id. at 307. The Oregon Supreme Court reversed, saying:
The Department argues that this analysis results in a portion of the tangible assets of Pacific inappropriately being exempted from taxation. We agree. Accepting (as the Tax Court and the parties apparently did) the idea that what we are searching for is what a hypothetical willing buyer of this property would pay to a hypothetical willing seller, it seems clear to use that a willing buyer of the plant and equipment would be agreeable to paying a figure close to [historic cost less depreciation], because the buyer could then earn off all that expenditure.
*777 We say “close,” because there is much evidence in this record to the effect that regulation to some extent diminishes the earning potential of regulated property and, therefore, a willing buyer would wish to discount the property to some degree. Thus, Pacific’s property may be affected by a measure of obsolescence. But — as the Tax Court recognized — DIT and ITC are no measure of (or surrogate for) that obsolescence. Both are property purchased through tax allowances for certain capital investments.
Both DIT and ITC are property and have intrinsic value____Absent any satisfactory evidence establishing an appropriate measure of obsolescence, it is inappropriate to make any deduction for it by subtracting in toto the values for DIT and ITC — the only deduction for which Pacific argues. We agree with the Department that the Tax Court erred in making the deduction.
Id. at 57-58, 775 P.2d 303. In the present ease, Tegarden speculates that DIT is “one of the primary causes” of external obsolescence. However, there is no evidence in the record to establish an appropriate measure of external obsolescence of PacifiCorp’s DIT assets, nor of the other assets claimed to be externally obsolescent, including the identity and value of those assets.
In a subsequent case not involving PacifiCorp or its predecessor, the Oregon Supreme Court declined to adopt the income shortfall method or “income-deficiency method” urged by the taxpayer. Delta Air Lines, Inc. v. Dept. of Revenue, State of Oregon, 328 Or. 596, 984 P.2d 836, 849 (1999). The Court stated it was “unable to conclude from the evidence before us what type of obsolescence adjustment — if any — is required,” based on that method. Id. The Court continued:
[W]e find it significant that, as Delta’s appraiser testified, by using the income-deficiency method, his cost indicator always would have equaled his income indicator, because his cost indicator measured obsolescence by examining the projected income stream. At best, therefore, Delta’s income deficiency method is illogical, because it incorporates income figures that account for only owned assets, while it uses cost figures that account for both owned and leased assets. At worst, Delta’s income-deficiency method strips the cost approach of its use as an independent determiner of value, because it always will track the result under the income approach.
Id. (emphasis added) Likewise, in this case, Tegarden’s cost indietor measured obsolescence by examining the projected income stream.
Another PaeifiCorp state, Montana, was no more enamored with the income shortfall method. In PacifiCorp v. State of Montana, Dept. of Revenue, 360 Mont. 259, 253 P.3d 847 (2011), the Montana Supreme Court had before it several of the participants involved in the present case. Attorney David J. Crapo, who ably represented PaeifiCorp in the present case, was counsel for PaeifiCorp, the appellant in the Montana case. Tegarden acted as PacifiCorp’s expert and Eyre as Montana’s. The Montana Tax Appeal Board rejected “the income shortfall method — the method advanced by PaeifiCorp to demonstrate that about $2.6 billion worth of additional obsolescence existed.” Of some interest is the fact that PaeifiCorp did not appeal that decision. Id. at 853. Nevertheless, PacifiCorp contended that it was entitled to the additional deduction for external obsolescence, even though it was not disclosed on its FERC Form 1. Id. at 854.
The Montana Court accepted the Revenue Department’s position that the FERC Form 1 reflected all forms of obsolescence since, as the Court pointed out, the FERC definition of depreciation included “wear and tear, decay, action of the elements, inadequacy, obsolescence, changes in the art, changes in demand and requirements of public authorities.” Id. at 854 (emphasis in original). The Montana Court apparently read “requirements of public authorities,” to equate to governmental regulations and restrictions. This certainly is a common sense reading. The Court went on to say, however, that additional reductions or adjustments might be made “if a taxpayer could show that additional depreciable value existed,” but that PaeifiCorp had failed to provide “a figure for how much obsolescence had not been cap *778 tured.” Id. The Court noted that the Tax Appeal Board had “rejected Tegarden’s income shortfall approach because, among other reasons, it failed to account for income from properties that PacifiCorp had purchased with deferred income taxes.” Id. According to the Court, “[ajbsent the evidence based on the rejected income shortfall method, [the Tax Appeal Board] had no evidence before it that suggested that unaccounted-for obsolescence existed.” Id. at 855. The Court concluded, “PacifiCorp bore the burden of proving the Department’s method inadequate. PacifiCorp came forward with no evidence of additional obsolescence that the Department had failed to analyze.” Id. In this case, also, PacifiCorp made no accounting of income it may have received from properties that it had purchased with deferred income taxes and, more importantly, failed to identify and value DIT properties, or any other assets claimed to be externally obsolescent.
The Utah Supreme Court has similarly taken a skeptical view of claims asserting an entitlement to economic obsolescence deductions under the cost approach. In a case where a taxpayer claimed an economic obsolescence rate of 31%, the Court first cited a ease involving a predecessor of PacifiCorp— Utah Power & Light Co. v. Utah State Tax Comm’n., 590 P.2d 332 (Ut.1979) — in which it had held that a taxpayer must not only show error in an assessment, but must also “provide a sound evidentiary basis upon which the Commission could adopt a lower valuation.” Alta Pac. Assoc., Ltd. v. Utah State Tax Comm’n., 931 P.2d 103, 112 (Ut.1997). The Court rejected the economic obsolescence claim stating:
Nowhere in [Alta’s] appraisals’ explanation for its 31% economic obsolescence rate were the specific federal restraints mentioned. During their testimony, the owners’ appraisal experts also failed tó explain how each of the federal burdens impacted the appraisal. Thus, even if Sevier County’s assessments were flawed for failing to account for each and every regulatory burden, reversal of the Commission’s approval would be inappropriate because the owners failed to suggest a sound alternative method to correct the flaws.
Id. at 113.
The State of Arizona, which is also in PacifiCorp’s service area, likewise takes a dim view of allowing a claim for external obsolescence where it is unsupported by actual proof. In Eurofresh, Inc. v. Graham County, 218 Ariz. 382, 187 P.3d 530, 537 (App.2008), after citing a number of cases from other states, including Utah’s Alta Pacific decision, the court said, “These authorities together teach that a taxpayer claiming external obsolescence must prove both the cause of the asserted obsolescence and that the subject property is actually affected by that cause.” The court held that, “as a matter of law, a taxpayer claiming external obsolescence must offer probative evidence of the cause of the claimed obsolescence, the quantity of such obsolescence, and that the asserted cause of the obsolescence actually affects the subject property.” Id. at 538.
The Commission proffered another decision from the same court, Southwest Airlines Co. v. Arizona Dept. of Revenue, 2012 WL 3041179 (Ariz.App.2012), wherein Tegarden acted as expert for the taxpayer and Eyre acted as expert for the state.[20] The court noted that, “[i]n applying the cost method, Tegarden determined that additional deductions from the statutory formula were needed to account for obsolescence.” Id. at 4. The court continued:
In its specific criticisms of Tegarden’s opinions, the Department argues his reliance upon the income-shortfall approach to perform a cost valuation was erroneous. It argues Tegarden’s analysis was flawed because, inter alia, rather than compare Southwest’s income to the income of other airlines, Tegarden “created a comparison market by hypothesizing an entirely subjective figure for what he thought that *779 [Southwest’s] earnings should be and compared the hypothetical earnings to its actual earnings.” The tax court accepted Eyre’s criticism of this method as circular. Moreover, the Department argues that the income-shortfall approach that Tegarden used has been rejected by the Western States Association of Tax Administrators. See PaeifiCorp, 258 P.3d at 854-55 (rejecting use of income-shortfall approach); Transcon. Gas Pipe Line Corp. v. Bernards Twp., 111 N.J. 507, 545 A.2d 746, 754 (N.J.1988) (noting “circularity” of the approach).
Id. Thus, the court thought it inappropriate for Tegarden to hypothesize a subjective figure for what he thought the taxpayer’s earnings should be and then compare the hypothetical earnings to its actual earnings in order to derive an external obsolescence deduction.
I agree with the skepticism expressed by these courts for allowing a large deduction of taxable value for external obsolescence, where there is no competent evidence to establish that the obsolescence actually exists. PaeifiCorp postulates that it is entitled to a one-fifth reduction in the assessed value of its property under the cost approach because it is not achieving the rate of return its investors would prefer. The Commission characterizes PacifiCorp’s position as using the “assumption of obsolescence to reduce the cost approach to the income approach.” The Commission argues:
It does this by using the same “investor required rate of return” it used to develop the income approach. Stripped of its gloss, the basic argument is: (1) the cost approach yields a value significantly higher than the income approach, (2) the reason for the discrepancy must be obsolescence, therefore (3) use the percentage difference between the assumed actual rate of return and assumed “investor required rate of return” to determine the assumed obsolescence. Now the income approach and cost approach agree. The reasoning is circular and has the result of gutting the cost approach to value by relying on a critical income approach factor to calculate the cost approach.
In my estimation, the income deficiency or shortfall method of establishing cost is unreliable, as a matter of law, where the taxpayer fails to establish the claimed obsolescence assumed by that method by offering competent evidence: to establish the factors comprising the claimed obsolescence, to identify the assets affected thereby, and to quantify the amount of obsolescence for each asset. The record here contains no such evidence. Thus, I would hold, as have our sisters states in similar circumstances, that PaeifiCorp has failed to carry its burden of establishing entitlement to an additional deduction for external obsolescence.[21]
In this case, PaeifiCorp merely speculates, through use of the income shortfall method, that some sort of external obsolescence is keeping it from making the amount of money it wants to make. It could be “competition, changes in supply and demand, changes in the economy, and changes in interest rates or costs of capital,” but “probably” the main cause is the “regulatory aspects that affect PaeifiCorp.” The company contends that the depreciation it disclosed on its FERC Form 1 did not include external obsolescence but offers no explanation as to why it apparently ignored the FERC definition of depreciation — which includes “obsolescence, changes in the art, changes in demand and requirements of public authorities” — and failed to report those items. All of these elements appear to be included in Tegarden’s description of external obsolescence, particularly the last element, which would seem to equate to governmental regulation. I am inclined to agree with the Montana Supreme Court that the amount a utility designates as depreciation on its FERC Form 1 includes all obsolescence unless the utility can establish through competent evidence that additional depreciable value actually exists. PacifiCorp v. State of Montana, 253 P.3d at 854. If PaeifiCorp contends that a primary cause of its “lower-than-adequate rate of return on all *780 property is the regulatory commission’s specific exclusion of certain properties from the rate base, i.e., those properties financed by the funds provided by the deferral of federal income taxes,” it would seem that such properties would easily be identifiable, that the amount expended upon them out of deferred income taxes could be quantified, and that the effects on earnings, both positive and negative, could be shown.[22] Instead, PacifiCorp urges a blue sky approach where none of this proof need be proffered.[23]
PaeifiCorp contends that part of the external obsolescence results from regulatory lag — delay by regulators in getting property placed into the rate base. However, PaeifiCorp fails to establish a value for this factor. PaeifiCorp is perfectly capable of calculating a value for regulatory lag. In Utah Power & Light Co. v. Idaho Public Utilities Comm’n., 102 Idaho 282, 284-85, 629 P.2d 678, 680-81 (1981), this Court overruled the Idaho Public Utilities Commission’s decision denying PacifiCorp’s predecessor a 1% factor in its allowed rate of return for regulatory lag or “attrition.”[24] The Court further allowed a regulatory lag or attrition allowance in a subsequent rate of return requested by Utah Power in Utah Power & Light Co. v. Idaho Public Utilities Comm’n., 105 Idaho 822, 826-27, 673 P.2d 422, 427-28 (1983). If PacifiCorp’s predecessor could document and quantify a regulatory lag factor in proceedings where it sought to increase its allowed rate of return, it certainly could do the same in a case where it seeks to decrease the amount of its property taxes by claiming regulatory lag.
Before concluding, an observation regarding Tegarden’s use of the income deficiency method is appropriate. In support of his calculation of external obsolescence, Tegarden cites The Valuation of Real Estate, 3rd, by Ralph A. Ring and James H. Boykin. In his appraisal, Tegarden includes an example from page 424 of the Ring and Boykin publication, demonstrating the calculation of external obsolescence. The example shows a 2% loss in earnings resulting in a 17.4% deduction for external obsolescence, calculated “by the difference in the rate of return allowed by regulatory agencies and the rate of the return that the investment market indicates as competitive to attract a willing, able, and informed purchaser (investor).” Yet, instead of using PaeifiCorp’s allowed rate of return as of January 1, 2008, the Commission’s valuation date of the property, which the Commission points out was 8.27%, Tegarden used a projected rate of return based on PaeifiCorp’s five previous years of actual earning experience. Tegarden provided no explanation as to the departure from the methodology utilized by Ring and Boy-kin. We are left to speculate.
The Commission’s regulations for assessment of utility company operating property certainly contemplate the possibility of a deduction for obsolescence. Rule 405.05.C provides:
The appraiser shall attempt to measure obsolescence, if any exists. If obsolescence is found to exist, it may be considered in the cost approach.
IDAPA 35.01.03.405.05.C. Here, the Commission’s appraiser did not find obsolescence to exist, other than as may have been claimed by PaeifiCorp in its FERC Form 1. To obtain the benefit of any additional obsolescence that PaeifiCorp may have neglected to include in the FERC Form 1, despite the FERC definition of depreciation, it was incumbent upon PaeifiCorp to establish through competent evidence the factors comprising the claimed obsolescence, the amount attributable to each factor, and the effect on earnings, both positive and negative, of each *781 factor. PacifíCorp has failed to do so and, therefore, I would reverse the district court’s holding adopting PacifiCorp’s cost valuation.
Chief Justice BURDICK concurs.

. It may be that the Commission remembers when an assessor’s appraisal of property was presumed correct and would only be overturned where the taxpayer was able to show by clear and convincing evidence that the assessor’s evaluation "was manifestly excessive, fraudulent or oppressive; or arbitrary, capricious and erroneous resulting in discrimination against the taxpayer.” Merris v. Ada County, 100 Idaho 59, 64, 593 P.2d 394, 399 (1979). That changed on April 8, 2003, when the Governor signed into law House Bill 302, emergency legislation that established a "preponderance of the evidence" standard for tax appeals. 2003 Idaho Sess. Laws, 703; I.C. § 63-409(2). As the statement of purpose accompanying the legislation said:
This legislation changes the legal standard from one that requires proof that an assessment is manifestly excessive, arbitrary and capricious, or fraudulent and oppressive, to one that requires simply that the assessment is erroneous. It changes the burden of proof to satisfy that standard from a "clear and convincing” burden to the normal "preponderance of the evidence” standard applicable to most civil cases.
With this less favorable evidentiary standard, the Commission must step up its game by competently challenging questionable evidence submitted on behalf of a taxpayer.

. It should be noted that the Southwest decision contains a notice that "This decision does not create legal precedent and may not be cited except as authorized by applicable rules.” With that cautionary note and with the understanding that, even without it, the decision is no way binding on this Court, it is interesting to get the Arizona court's take on the income shortfall method.

. While I do not have a bone to pick with the district court’s decisions in admitting or considering PacifiCorp’s evidence, that evidence is simply insufficient, as a matter of law, to establish its entitlement to an external obsolescence deduction.

. Such a showing would have the added benefit of establishing whether and to what extent such assets were located in Idaho.

. It isn’t entirely clear how inclusion of DIT properties in the rate base would improve PacifiCorp’s earnings when it is apparently earning less than its allowed rate of return. Some explanation and evidence in this regard would also be helpful and appropriate.

.Of interest is the Court’s observation that:
A rate of return authorized by a Commission is not a guarantee of any level of revenues---Conflicting views exist as to whether a utility’s failure to earn an authorized rate is, in and of itself, the final test of [regulatory lag].
Id. at 285, 629 P.2dat681.